**In re Ocal Ray SMITH, Laurie Jean Smith, Debtors.**

**No. 05–73567.**

United States Bankruptcy Court, W.D. Virginia, Roanoke Division.

Nov. 16, 2006.

Berrell F. Shrader, Blacksburg, VA, for Debtors.

## DECISION & ORDER

ROSS W. KRUMM, Bankruptcy Judge.

At Roanoke in said District this 16th day of November, 2006:

Before the Court is the United States Trustee's (herein "Trustee") Motion to Dismiss the Chapter 7 petition of the above-styled debtors (herein "Smiths") for substantial abuse of the provisions of Chapter 7 of Title 11 of the United States Code (the "Bankruptcy Code"). The matter was heard on September 12, 2006, at which time the Court received evidence and heard oral argument. At the conclusion of the trial, the Court made findings of fact and rulings of law from the bench and denied the Motion to Dismiss. The reasons both stated on the record on September 12, 2006, and herein constitute the findings and rulings of the Court.

### FACTS

On September 13, 2005, the Smiths filed a voluntary petition under Chapter 7 of the Bankruptcy Code. On December 15, 2005, the United States Trustee moved this Court to dismiss the Smiths' case for substantial abuse of the Code under Section 707(b).

The Trustee asserts that the Debtors filed inaccurate schedules and maintain an excessive family budget. In particular, the Trustee avers that gross income of the male Debtor was understated by $1,088 per month and that the female Debtor understated her income by $221. The Trustee also objects to some of the Debtors' monthly expenditures: to wit, $900 for transportation and $1,195 for automobile payments. The Trustee states that, based on the Debtors' income, they would be able to service a "substantial portion" of their debt in Chapter 13.

The Debtors offered evidence at the hearing to address the objections raised. To explain the high monthly payments on the vehicles, Mr. Smith testified that the Debtors live in a rural area on a road not maintained by the state. The Debtors own a 2003 Ford F–250 and 1999 Dodge Durango because they require vehicles that can traverse the roads between their home and those maintained by the state. He stated that when the Debtors moved to Virginia from Florida he owned another heavy-duty vehicle, which was expensive to operate and maintain. He elected to dispose of the vehicle and replaced it with the 2003 Ford F–250, because this was the only vehicle he could find that he could qualify to purchase. The replacement vehicle permits him to travel on the road by his home to the road maintained by the state and get to his job. With respect to the Durango, the Debtors leased it from 2000 to 2004. When the lease was scheduled to expire in 2004, the Debtors made the decision to purchase, because they believed their credit rating would hamper their efforts to purchase another vehicle.

To explain the high transportation costs, Mr. Smith testified that he is a lineman for American Electric Power in Christiansburg, Virginia and Mrs. Smith explained that she is employed in Blacksburg, Virginia. Both jobs are some distance from the Debtors' home in Riner, Virginia. The distance to work and the need to own four-wheel drive vehicles were used to explain the high transportation cost in Debtors' budget.

As to the Debtors' income, the evidence showed that the Debtors made an effort to provide an accurate representation of their estimated monthly income. Mrs. Smith's

testimony revealed that Mr. Smith's income is highly contingent on whether or not Mr. Smith receives any overtime pay. Mrs. Smith represented that weather earlier in the past year had provided Mr. Smith with more overtime than was normal.[1]

## ANALYSIS

Section 707(b) of the Bankruptcy Code reads as follows:

"(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested. . . ."

■ Under Chapter 7 of the Bankruptcy Code, a debtor's non-exempt property is liquidated by the Trustee, the proceeds are distributed to creditors, and the debtor receives a discharge of all dischargeable debts. Creditors may receive as much as a full repayment or may receive nothing at all. Section 707(b) allows the courts to close the doors of Chapter 7 relief to some individual debtors for "substantial abuse," forcing them either to proceed under Chapter 13 or Chapter 11 and pay their creditors through a plan, or eschew bankruptcy relief altogether.

■ As the Fourth Circuit noted in *In re Green*, 934 F.2d 568, 570 (4th Cir.1991), Congress never defined *which* debtors ought be excluded from Chapter 7, i.e. what "substantial abuse" means, and there is little in the way of legislative history to shed light on the question. The *Green*

Court interpreted Section 707(b) and arrived at two conclusions: (1) there is no *per se* rule that the ability to pay precludes Chapter 7 relief; however, ability to repay the debt is a substantial factor in evaluating substantial abuse and (2) the substantial abuse determination must be made on a case-by-case basis, in light of the totality of the circumstances. *Id.* at 572–73. In addition to ability to pay, the *Green* Court enumerated five factors to be considered when making this determination:

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3) Whether the debtor's proposed family budget is excessive or unreasonable;

(4) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(5) Whether the petition was filed in good faith.

*Id.* at 572. The *Green* Court reasoned that the analysis of these factors should "reflect consideration of the Section 707(b) presumption in favor of granting the requested relief." *Id.* at 573. In concluding its opinion in the *Green* case, the Fourth Circuit listed three cases as points of reference for bankruptcy courts applying Section 707(b): *In re Grant*, 51 B.R. 385 (Bankr.N.D.Ohio 1985); *In re Peluso*, 72 B.R. 732 (Bankr.N.D.N.Y.1987); and *In re Shands*, 63 B.R. 121 (Bankr. E.D.Mich.1985). In each of these cases, the bankruptcy court dismissed under Section 707(b). However, in each case, the debtor(s) displayed some aggravating characteristic beyond mismanagement of

---

**1.** Mr. Smith troubleshoots power issues which are accompanied by inclement weather

such as snow and hurricanes.

resources that the court relied upon in dismissing. In *Grant,* the debtors were guilty of "freewheeling spending."[2] In addition, the court questioned the good faith of the debtors and noted their failure to "realistically and accurately list their monthly expenditures ..." *Grant,* 51 B.R. at 387. In *Peluso,* after remarking that the debtor had altered his schedules on three occasions, the court commented that "the manner and degree to which Debtor's figures have been varied raises the degree of scrutiny the Court applies to all of the facts of Debtor's case." *Peluso,* 72 B.R. at 738. The debtor in *Peluso* also treated some creditors preferentially in order to protect co-signers, and, like the debtors in *Grant,* 51 B.R. at 387, was still supporting emancipated children. 72 B.R. at 738. In *Shands,* the debtor had arranged her expenses so as to pay *all* of her creditors except for her ex-husband, and was even forthcoming about her intent to use her bankruptcy "against her ex-husband." *Shands,* 63 B.R. at 124.

■ Taking together the *Green* factors and the three cases above, it appears to this Court that there must be a strong showing of some additional, improper intent on the part of the debtor, aside from the intent to discharge one's debts, in order to warrant a dismissal under Section 707(b). The purpose of Chapter 7 is to provide honest debtors with a discharge from their debts. Often debtors need a discharge because they have mismanaged their resources or made ill-advised financial decisions which are difficult to reverse. In this case, it is possible that the Smiths could have purchased vehicles with lower monthly payments. It is possible that, years ago, they could have chosen different lines of employment and business ventures that, today, would put them in a more solvent position. They could have elected to live closer to their places of employment or lived on a road maintained by the state that would have permitted them to own vehicles that were more fuel efficient. The question is whether their choice to stick by those decisions now arises to substantial abuse of Chapter 7.

■ In applying the *Green* factors to this case this Court finds:

1. No evidence that sudden illness, calamity or unemployment caused the filing;

2. No evidence of excessive purchase of consumer items or cash advances;

3. No evidence of a family budget that is excessive or unreasonable given the facts and circumstances of the debtors at filing. Well in advance of the petition date Debtors made personal and business decisions that committed them to moving to Virginia, living some distance from their respective places of employment, and living away from state maintained roads. While, with hindsight, these decisions may not have been financially wise, they do not rise to a level of abuse which rebuts the statutory presumption of "granting the relief requested." 11 U.S.C. § 707(b).

4. No evidence that Debtors' schedules do not accurately reflect debtors' financial condition. The exact dollar figure of the Debtors' income is debatable, because Mr. Smith's monthly income is highly contingent on whether he works overtime, which is, itself, contingent upon the weather. The evidence, instead, indicates that the Debtors' stated income did reasonably and accurately reflect the true financial condition of the Debtors; and,

---

2. That is not to imply that the spending patterns of the debtors in *Grant* and Debtors before this Court are at all similar. The Grants wound up in bankruptcy by putting their son on a $400.00 per month allowance, spending $2100.00 in one visit to "an exclusive dress shop," and having $9,000.00 Christmas extravaganzas. 51 B.R. 385, 386. All of these expenses are in 1983 dollars, and still dwarf the expenses of the Smiths.

5. No evidence that the petition was not filed in good faith. The only evidence submitted in support of such a finding was the inaccuracy of the Debtors' financial condition. The evidence indicates the Debtors' schedules reasonably and accurately reflected their true financial condition and therefore, no basis for a finding that the petition was not filed in good faith is present.

■ In addition to the five factors enumerated in *Green*, the Fourth Circuit also emphasized that the ability to repay is the primary factor in determining substantial abuse. 934 F.2d at 572. While this element is generally present in a finding of substantial abuse, *Green* instructs that the mere presence of net disposable income that could support a Chapter 13 plan is not in and of itself sufficient to find substantial abuse. 934 F.2d at 572. Rather, it is but one factor to be considered. *Id.*

■ As a general rule, the ability to pay is measured by assessing how much disposable income a debtor would be able to pay his or her unsecured creditors. *See, e.g., In re Norris*, 225 B.R. 329, 332 (Bankr.E.D.Va.1998). In the present case the Debtors have an ability to pay.[3]

It is clear to this Court that the Debtors will either have to revise their personal and business affairs in the future, or run the risk of another event of insolvency. However, an unwillingness or inability to change is not indicative of abuse of the bankruptcy system in their current Chapter 7 bankruptcy.

## CONCLUSION

This Court does not see factors in this case which would lead to a finding "that

granting relief would be a substantial abuse of the provisions of [Chapter 7 of the Bankruptcy Code]." 11 U.S.C. § 707(b). The Debtors may be responsible for financial mismanagement or error pre-petition of the kind that leads many to file Chapter 7 bankruptcies. However, their failure or inability to reform their pre-petition plight does not translate into Section 707(b) abuse.[4]

Having considered the evidence and the arguments of the Trustee and the Debtors, and having considered the Fourth Circuit's analysis of Section 707(b) of the Bankruptcy Code, this Court holds that the U.S. Trustee fails to rebut the presumption found in the statute "in favor of granting the relief requested by the debtor." Accordingly, it is

### ORDERED:

That the Trustee's Motion to Dismiss for Substantial Abuse is DENIED.

---

3. Depending on how one views the evidence as a whole, there is a range of net disposable income that could be as high as $1300 per month or as low as $250 per month.

4. The Court notes that each Section 707(b) case is fact driven; thus, the Court's ruling here and reasoning to support it is confined to the specific facts of this case.